THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>Plaintiff,<br>v.<br><br>BECKY JEAN JOHNSON, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br>• **GRANTING RECEIVER'S [21] MOTION FOR SUMMARY JUDGMENT**<br>**AND DENYING**<br>• **DEFENDANT'S [22] MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**<br><br>Civil No. 2:24-cv-00450-DN<br><br>District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

This matter arises out of the underlying civil enforcement action, *United States v. RaPower-3, LLC et al.*, 2:15-cv-00828-DN-DAO (D. Utah) ("Civil Enforcement Case"). In that underlying action, Plaintiff R. Wayne Klein was appointed as Receiver ("Receiver") over the defendants in that matter: RaPower-3, LLC, International Automated Systems Inc., LTB1, LLC, their subsidiaries and affiliates, and the assets of Neldon Johnson and R. Gregory Shepard.[1] In the Civil Enforcement Case, the Receivership Entities were found to be operated as an abusive tax fraud to enable funding for Neldon Johnson and his family.[2]

To recover funds for the receivership estate, the Receiver previously initiated an action against Randale Johnson ("Mr. Johnson")—the ex-husband of Defendant Becky Johnson ("Ms.

[1] Collectively referred to as the "Receivership Entities."

[2] *United States v. RaPower-3, LLC*, 343 F. Supp. 3d 1115, 1198 (D. Utah 2018), *aff'd*, 960 F.3d 1240 (10th Cir. 2020).

Johnson")—in *Klein v. Johnson*, Case No. 2:19-cv-00532 (D. Utah) (the "Randale Johnson Case").[3] In that proceeding, partial summary judgment was granted against Mr. Johnson, finding him liable for $200,000 in fraudulent transfers and determining that an additional $464,467.80 in transfers were made with the actual intent to hinder, delay, or defraud creditors.[4]

In March 2021, while the Randale Johnson Case was actively pending, debtor Randale Johnson quitclaimed his one-half interest in real property located in Provo, Utah (the "Provo Property") to Defendant Becky Johnson Johnson.[5] In this action, the Receiver now asserts claims against Ms. Johnson under Utah's Uniform Voidable Transactions Act ("UVTA") and for unjust enrichment, seeking to void the quitclaim transfer as a fraudulent attempt by an insolvent debtor to place the Provo Property beyond the reach of his creditors.[6]

Currently before the Court are two cross-motions: the Receiver's Motion for Summary Judgment[7] and Defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment.[8] Because Defendant's post-answer Motion to Dismiss is procedurally barred and her alternative motion for summary judgment fails to establish material facts entitling her to summary judgment, Ms. Johnson's Motion to Dismiss is DENIED.

The Receiver's Motion seeks summary judgment on his First, Second, and Third causes of action arguing the transfer to Becky Johnson are voidable because they were made with actual

---

[3] *Klein v. Johnson*, No. 2:19-CV-00532-DN-PK, 2023 WL 2540790, at *1 (D. Utah Mar. 16, 2023); *see also United States v. RaPower-3, LLC*, 343 F. Supp. 3d 1115, 1198 (D. Utah 2018), *aff'd*, 960 F.3d 1240 (10th Cir. 2020).

[4] *Klein v. Johnson*, 2023 WL 2540790, at *1.

[5] Quit Claim Deed, Exhibit 5 to Receiver's Motion for Summary Judgment, docket no. 21-5, filed December 4, 2025.

[6] Receiver Wayne Klein's Motion for Summary Judgment ("Receiver's Motion"), docket no. 21, filed December 4, 2025.

[7] *Id.*

[8] Defendant Becky Johnson's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment Under Conditional Acceptance for Value and Demand for Stay Pending Certification of Public Debt Claim ("Motion to Dismiss"), docket no. 22, filed December 5, 2025.

or constructive fraud.[9] Summary judgment in favor of the Receiver and against Ms. Johnson is appropriate for the reasons explained below. Therefore, the Receiver's Motion for Summary Judgment[10] is GRANTED.

**TABLE OF CONTENTS**


1. UNDISPUTED MATERIAL FACTS ........ 3
2. DISCUSSION ........ 6
    a. Receiver's Motion for Summary Judgment is Granted. ........ 7
        i. The Transfer of the Provo Property is Avoidable Because it was Made with Actual Intent to Hinder, Delay, or Defraud Creditors ........ 9
        ii. The Quitclaim Deed Was Made Without Receipt of Reasonably Equivalent Value and the Debtor Was Insolvent at the Time of the Quitclaim Deed. ........ 11
        iii. The True Nature of the Modification Stipulation Does Not Provide for Alimony or Child Support; Rather, It Is a Property Settlement. ........ 12
    b. Ms. Johnsons' Motion to Dismiss, and in the Alternative, Motion for Summary Judgment, Is Procedurally Defective, and Does Not Establish a Genuine Issue of Material Fact. ........ 14
3. ORDER ........ 15


## 1. UNDISPUTED MATERIAL FACTS[11]

1. Defendant Becky Johnson ("Ms. Johnson") was previously married to Randale Johnson ("Mr. Johnson"). A divorce decree dissolving the marriage was entered on May 12, 2015 ("Original Divorce Decree").[12]

2. Pursuant to that decree they both received one-half ownership in real property located at 1904 W 960 N, Provo, Utah ("Provo Property").[13]

---

[9] Receiver's Motion at 1, 6–10.

[10] *Id*.

[11] Ms. Johnson's Opposition did not formally dispute any of the material facts set forth in the Receiver's Statement of Material Facts in accordance with Rule 56. Defendant Becky Johnson's Memorandum in Opposition to Plaintiff's Doc. 21 and Request for Relief Under Fed. R. Civ. P. 56(d) ("Opposition"), docket no. 27, filed February 24, 2026. Pursuant to Federal Rules of Civil Procedure 56(e) these facts are deemed undisputed. The facts cited throughout this section draw directly from the Receiver's Motion, which were properly supported by Rule 56(c)(1)(A)–(B) materials.

[12] Receiver's Motion at 4, ¶ 3; Exhibit A to Receiver's Motion, docket no. 21-2, filed December 4, 2025.

[13] *Id.* at 10–11.

3. The decree was modified on July 10, 2018 and March 4, 2021 ("Modified Stipulation").[14]

4. The Original Divorce Decree provides does not specify who will occupy the Provo Property, only that it will be held "jointly" and "[b]oth parties have the right to sell his/her half ownership in the property to the other party at any time."[15]

5. On July 26, 2019, the Receiver commenced the Randale Johnson Case in this court.[16]

6. On March 16, 2023, in the Randale Johnson Case summary judgment was granted in part and denied in part against Mr. Johnson.[17]

7. Randale Johnson was found liable in the amount of $200,000. Trial was set as to an additional $464,467.80 in transfers found were voidable. But there were unresolved fact issues as to whether Mr. Johnson provided reasonably equivalent value and took the transfers in good faith.[18]

8. On March 4, 2021, during the pendency of the Randale Johnson Case, a Stipulated Order to Modify Decree of Divorce and Judgment ("Modified Decree") was entered in the divorce case between Randale Johnson and Becky Johnson.[19]

---

[14] Modified Stipulation, Exhibit B to Receiver's Motion, docket no. 21-3, filed December 4, 2025 (noting that Receiver argues this is a "purported" stipulated modification. Interestingly, the stipulation is dated the same date that Ms. Johnson argues Mr. Johnson was insolvent, see Discovery Responses, Exhibit E, Response to Request for Admission No. 8.

[15] Original Divorce Decree, 11.

[16] Receiver's Motion at 4, ¶ 4; Randall Johnson Case (*Klein v. Johnson*, Case No. 2:19-cv-00532 (D. Utah)).

[17] Receiver's Motion at 4, ¶ 5; *see also Klein v. Johnson*, No. 2:19-CV-00532-DN-PK, 2023 WL 2540790, at *1 (D. Utah Mar. 16, 2023).

[18] Receiver's Motion at 4, ¶ 5; *see also Klein v. Johnson*, No. 2:19-CV-00532-DN-PK, 2023 WL 2540790, at *1 (D. Utah Mar. 16, 2023).

[19] Modified Decree, Exhibit C to Receiver's Motion, docket no. 21-4, filed December 4, 2025.

9. Pursuant to this Modified Decree, Ms. Johnson was given "the entire use and possession of the [Provo Property].[20]

10. The Modified Decree modified the use and possession, but it did not modify the parties' ownership interest in the Provo Property or the value of the Provo Property."[21]

11. On March 9, 2021, Randale Johnson quitclaimed all of his interest in the Provo Property to Becky Johnson (the "Transfer").[22]

12. The Quitclaim Deed provides that his interest was quit claimed "for the sum of Ten Dollars and other good and valuable consideration."[23]

13. The Complaint was filed in this case on June 21, 2024 seeking to void this transfer.[24]

14. In her Discovery Responses to the Receiver in this case, Ms. Johnson admits that her and Randy "signed a private novation" where she would be able to "buy out Randy's 50% split of the equity, because Randy stopped making the house payment, HOA, and the Life Insurance Policy."[25]

15. In her Discovery Responses, Ms. Johnson also admits that she received a benefit from the Transfer, but that this was for her "outstanding accomplishment in fulfillment of the

[20] *Id.* at 2.

[21] *Id.*

[22] Quit Claim Deed, Exhibit 5 to Receiver's Motion for Summary Judgment, docket no. 21-5, filed December 4, 2025.

[23] *Id.*

[24] Complaint, docket no. 1, filed June 21, 2024.

[25] Plaintiff's Discovery Responses Requested by Receivor [sic] ("Discovery Responses"), Exhibit E to Receiver's Motion, 3, Response to Request for Admission No. 5, Docket no. 21-6, filed December 4, 2025.

Buy-out stipulation of July 10, 2018, Randy's Domestic Support Obligation providing for Me and [daughter of Ms. Johnson and Mr. Johnson, born October 1998]."[26]

16. In her Discovery Responses, Ms. Johnson responds to a request to admit that she was aware of the Mr. Johnson's insolvency at the time of the Transfer: "DENY. Randale was rendered insolvent July 10, 2018 . . . ." While she purports to deny, her answer admits that Mr. Johnson was insolvent as of July 10, 2018.[27]

17. In her Discovery Responses she also admits that she was aware of the lawsuit filed against Mr. Johnson and that she "was unaffected until Randy lost his job in 2018."[28]

## 2. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29] "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[30] "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"[31]

Pursuant to Utah Code section 24-6-202, a transfer is voidable if the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor."[32] A transfer is also voidable if the debtor does not receive reasonably equivalent value in exchange for the

---

[26] *Id.* at 4, Response to Request for Admission No. 7; *see also* Original Decree at 1–2.

[27] Discovery Responses at 4–5, Response to Request for Admission No. 8.

[28] *Id.* at 2–3, Response to Request for Admission No. 6.

[29] Fed. R. Civ. P. 56(a).

[30] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007)(cleaned up) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, (1986)).

[31] *Id.* (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. at 586–587(1986)).

[32] Utah Code Ann. § 24-6-202.

transfer and the debtor was insolvent, was engaged in business for which the remaining assets were unreasonably small, or incurred debts beyond the debtor's ability to pay as they became due.[33] Such transfers may be avoided under the UVTA.[34]

**a. The Receiver's Motion for Summary Judgment is Granted.**

The Receiver's Motion seeks summary judgment on all of the fraudulent transfer claims; invalidation of the Quitclaim Deed; and to award the Receiver "a half interest in the Prov[o] Property or alternatively, order Ms. Johnson to pay the value of Mr. Johnson's interest in the Provo Property."[35] In her Motion to Dismiss,[36] and Opposition,[37] which also seeks summary judgment, Ms. Johnson argues that the transfer was for the purpose of a Domestic Support Obligation ("DSO"), which either creates a genuine issue of material fact or warrants summary judgment in her favor.[38] The DSO status, she says, should bar the Receiver from voiding the Transfer.[39]

The Receiver in Reply argues there are no disputed material facts, and only legal questions remain.[40] The Receiver argues that the transfer of the Provo Property constitutes a voidable transfer because the transfer was: (1) made with actual intent to hinder, delay, or defraud creditors (actual intentional fraudulent transfer); (2) made without receipt of reasonably equitable value for which the remaining assets were unreasonably small (constructive fraud);

---

[33] Utah Code Ann. § 24-6-202(1)(b), § 25-6-203(1).

[34] Utah Code Ann. § 25-6-303(1)(a).

[35] Receiver's Motion at 10.

[36] *See generally* Motion to Dismiss.

[37] *See generally* Opposition.

[38] *Id.* at 4; Motion to Dismiss at 2, ¶¶ 1–2.

[39] Opposition at 4–7.

[40] Reply Memorandum in Support of Receiver's Motion for Summary Judgment ("Reply"), 6, docket no. 29, filed March 10, 2026; *see also* Receiver's Motion at 6.

and, (3) made without receipt of reasonably equitable value because Mr. Johnson was insolvent at the time and unable to pay his other debts (present-creditor insolvency transfer).[41]

The Opposition asserts a complex web of defenses to challenge the Receiver's Motion for Summary Judgment. Ms. Johnson argues that the transfer of Mr. Johnson's interest in the Provo Property was supported by value and not voidable.[42] These similar arguments are presented in her Motion to Dismiss and reply supporting her dismissal motion.[43]

Specifically, Ms. Johnson raises the following defenses:

(1) the property interest awarded to her constitutes a federally protected Domestic Support Obligation provided "in lieu of ongoing support";[44]

(2) the transfer satisfied an antecedent debt and was exchanged for reasonably equivalent value through her assumption and payment of housing obligations—including the mortgage, HOA assessments, and insurance totaling $121,000.00 to $125,673.47;[45]

(3) the transaction lacks actual fraudulent intent because it was executed pursuant to a public court order for the legitimate purpose of preserving her primary shelter;[46] and

(4) the Plaintiff has failed to establish the statutory element of insolvency as a matter of law.[47]

---

[41] Receiver's Motion at 2.

[42] *See generally* Opposition.

[43] *See generally id.*

[44] *See id.* at 1, 4–7, 13–14.

[45] *See id.* at 10–13.

[46] *See id.* at 14.

[47] *See id.* at 7–10.

For the reasons stated herein, these arguments fail, and summary judgment in favor of the Receiver is warranted.

**i. The Transfer of the Provo Property is Avoidable Because it was Made with Actual Intent to Hinder, Delay, or Defraud Creditors**

In determining whether there has been actual intentional fraud, the UVTA relies on circumstantial indicators known as "badges of fraud" to demonstrate actual intent to hinder, delay, or defraud.[48] These badges of fraud are codified in Utah Code section 25-2-202(2). The Receiver argues that at least five badges of fraud are present here:

(1) Ms. Johnson was an insider, Utah Code section 25-6-202(2)(a);

(2) the transaction was not at arms length or reasonably equivalent to the value of the asset, Utah Code section 25-6-202(2)(h);

(3) Mr. Johnson was insolvent at the time of the transaction, Utah Code section 25-6-202(i);

(4) the Quitclaim Deed was recorded after Mr. Johnson had been sued, Utah Code section 25-6-202(2)(d); and,

(5) Mr. Johnson transferred substantially all of his assets, Utah Code section 25-6-202(2)(e).

In her Opposition, Ms. Johnson also argues the value exchanged for the Transfer was in the form of a Domestic Support Obligation, and that she paid the mortgage, HOA assessments, and insurance obligations on the Provo Property in return for his half-interest in the Provo Property.[49]

---

[48] Utah Code Ann. § 25-6-202.

[49] Opposition at 12.

She argues that the value given was her "reliev[ing] Randale Johnson of approximately $125,673.47 in mortgage liability in direct exchange for his equitable interest in the Homestead."[50] This amount is provided without any support. She cites to "Defendant Ex. '3,'" but attaches no exhibits or payment ledgers.[51] She argues that the Modified Decree's language awarding her "the entire use and possession of the home" gives her legal title and creates a disputed material fact.[52] She also argues that she has a secured claim in the bankruptcy action (but shows no evidence of this claim) and that she is owed discovery by the Receiver to prove that Mr. Johnson was insolvent at the time of the transfer.[53]

Multiple badges of fraud are present here: First, Ms. Johnson, as an ex-wife, is a non-statutory insider. A statutory insider is defined by Utah Code section 25-6-102(8), but this list is not exhaustive.[54] A court may look beyond the formal titled to determine if a person is a non-statutory insider by evaluating two prongs: "whether there is a close relationship *and* whether there is anything other than closeness to suggest that any transactions were not conducted at arm's length."[55]

Ms. Johnson's status as a non-statutory insider is supported by their former marriage, their shared parentage, and their joint occupancy and use of the Provo Property up and until the transaction (2018 to 2021).[56] Moreover, the Transfer was made without evidence of value given or an arm's-length agreement, other than unsupported claims that she paid the mortgage, HOA

---

[50] *Id.* at 12.

[51] *Id.*

[52] *Id.* at 13.

[53] *Id.* at 12.

[54] *In re U.S. Med., Inc.*, 531 F.3d 1272, 1277 (10th Cir. 2008).

[55] *Id.*

[56] Receiver's Motion at 8.

fees, and insurance.[57] Ms. Johnson in her Opposition cites to nonexistent exhibits and other court documents in support of her statements, none of which are attached to her Opposition or found elsewhere in the record.[58]

Second, Mr. Johnson was insolvent at the time of the transaction, and Ms. Johnson was aware of his insolvency.[59] Third, the Quitclaim Deed was recorded after the lawsuit had been filed against Mr. Johnson.[60] Fourth, before judgment was entered Mr. Johnson transferred substantially all of his assets.[61]

Finally, there is no language within the Modified Decree or Stipulated Modification providing that the "private novation" and subsequent Transfer were for Ms. Johnson's support in line with an order for domestic support order. Thus, there is evidence that this was an actual intent to hinder, delay, or defraud. And, therefore, based on all of the badges of fraud present the resulting transfer meets the statutory criteria to be set aside as voidable.

#### ii. The Quitclaim Deed Was Made Without Receipt of Reasonably Equivalent Value and the Debtor Was Insolvent at the Time of the Quitclaim Deed.

A transfer is voidable if the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time or became insolvent as a result of the transfer.[62] Both insolvency and lack of reasonably equivalent value have been shown by the undisputed facts.

---

[57] *See* Opposition at 3.

[58] *See id.* at 3 ("Receiver's Twenty-Ninth Quarterly Status Report, Doc. 1309, Defendant Ex. "4"), 12 ("Defendant Ex. 3"), 16 ("Settlement Agreement, Bankruptcy Doc. 100-2." "Bankruptcy Order Approving Settlement, Doc. 101.").

[59] Discovery Responses, 5, Response to Request for Admission No. 8.

[60] *Id.* at 3, Response to Request for Admission No. 4, 11, Response to Interrogatory No. 6.

[61] Receiver's Motion at 10. Ms. Johnson did not

[62] Utah Code Ann. § 25-6-203(1).

Ms. Johnson asserts that Mr. Johnson received value by her agreement to assume all of the mortgage and other maintenance payments on the Provo Property, from September 1, 2018 and onward for his half-interest in the Provo Property.[63] Ms. Johnson admits that Mr. Johnson was insolvent as of July 1, 2018, the same date the Modified Stipulation was signed.[64]

When the Modified Stipulation was purportedly signed on June 10, 2018, Mr. Johnson owned a 1/2 interest in the property.[65] Instead of following the Original Divorce Decree—which required a proper buyout of his interest—he signed his rights away so that he would no longer be responsible for the associated obligations.[66] By doing so, he transferred valuable equity for inadequate consideration while financially insolvent. Consequently, instead of receiving a lawful buyout, she accepted a voidable transfer that satisfies the elements of constructive fraud.

**iii. The True Nature of the Modification Stipulation Does Not Provide for Alimony or Child Support; Rather, It Is a Property Settlement.**

Ms. Johnson argues that there is a question of fact regarding whether the Quit Claim Deed is related to a Domestic Support Obligation.[67] This argument fails as a matter of law and fact. As an initial matter, the statutory protections for a Domestic Support Obligation under the Bankruptcy Code (e.g., 11 U.S.C. § 547) applies to trustee avoidance actions involving true alimony or child support; they do not apply to state-law claims under Utah's UVTA, nor do they shield ordinary property settlements or equity buyouts.[68]

---

[63] Modified Stipulation.

[64] Discovery Responses, 5, Response to Request for Admission No. 8.

[65] Quit Claim Deed (noting this was not signed or recorded until March 9, 2021).

[66] Quit Claim Deed; *see also* Opposition at 4–5; Discovery Responses at 3, Response to Request for Admission No. 4.

[67] *See generally* Opposition, 4–19.

[68] 11 U.S.C. § 547.

In *Sampson v. Sampson*, cited by Ms. Johnson in her Opposition, the Tenth Circuit explained that "[t]he critical question in determining whether the obligation is, in substance, support is 'the function served by the obligation at the time of the divorce.'"[69] And then determining "whether an obligation is 'actually in the nature of alimony, maintenance, or support . . . ."[70] In *Sampson*, the lower court looked beyond the formal labels used by the parties to evaluate the true economic nature and substance of the agreement and held that the transfer was for the purpose of spousal support.[71] The Tenth Circuit affirmed the lower court's decision, and held that that the debtor's obligation to make monthly payments to his former spouse was actually in the nature of support, despite being labeled as a "property settlement" in their agreement.[72]

Applying that functional standard here confirms that the transfer was an ordinary property settlement and not spousal or child support. Ms. Johnson's own Discovery Responses also confirm that the Transfer was a "buy out" of "Randy's 50% split of the equity" as discussed in the Original Decree.[73] The Stipulated Modification also expressly defines the transaction as a property-for-debt swap, stating that the transfer is made "in consideration for assuming all liabilities, debts, HOA fees and maintenance" from September 1, 2018 onward, with no mention whatsoever that the transfer was intended for support.[74] Ms. Johnson provides no information regarding her lack of income, employment opportunities, health condition, lack of education or

---

[69] *In re Sampson*, 997 F.2d 717, 725 (10th Cir. 1993).

[70] *Id.*

[71] *Id.* at 725–26.

[72] *Id.* at 726.

[73] Discovery Responses at 3, Response to Request for Admission No. 4.

[74] Stipulated Modification.

support needs – but more importantly the parties' agreements make no reference to support obligations.

Therefore, the argument that this is a Domestic Support Obligation is unsupported by the evidence Ms. Johnson cites and her Discovery Responses.

**b. Ms. Johnsons' Motion to Dismiss, and in the Alternative, Motion for Summary Judgment, Is Procedurally Defective, and Does Not Establish a Genuine Issue of Material Fact.**

Ms. Johnson's Motion to Dismiss her alternative Motion for Summary Judgment, is a convoluted narrative asserting unsupported facts and legally meritless claims. To the extent Defendant raises "sovereign citizen" theories—including references to the Sherman Antitrust Act—such claims fail as a matter of law, are patently frivolous, and do not create a triable issue of fact.[75] Ms. Johnson's Motion to Dismiss filing opens with textbook sovereign citizen rhetoric by referring to herself as a "living woman," asserting "secured party creditor" status under the Uniform Commercial Code, claiming she is the "Executrix" of the "Becky Jean Johnson Estate" and offering a "Conditional Acceptance for Value."[76] As established by the Tenth Circuit in *Lonsdale v. United States*[77], these pseudo legal assertions are patently frivolous, fail to create a triable issue of fact, and do not divest this court of jurisdiction. Beyond these substantive deficiencies, the Motion fails on threshold procedural grounds.

Ms. Johnson's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) is procedurally improper because it was filed on December 5, 2025—over fifteen months after she

---

[75] *United States v. My Dr. Suggests LLC*, No. 2:20-CV-00279-DBB, 2021 WL 662442, at *2 (D. Utah Feb. 19, 2021) (*Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) (holding that "sovereign" and pseudo legal claims are "completely lacking in legal merit and patently frivolous," and affirming that courts need not waste judicial resources addressing them); *see also* *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990) (rejecting "sovereign citizen" and commercial-law defenses as "patently frivolous" and holding that such arguments fail as a matter of law to create a triable issue of fact).

[76] Motion to Dismiss at 1.

[77] *Lonsdale*, 919 F.2d at1448.

filed her Answer to the Complaint on August 27, 2024.[78] Rule 12(b) mandates that a motion asserting failure to state a claim "must be made before pleading if a responsive pleading is allowed."[79] Having already answered the Complaint, Defendant is procedurally barred from seeking dismissal via a post-answer Rule 12(b)(6) motion.

To the extent her filing is evaluated as an alternative Motion for Summary Judgment, it fails to present admissible evidence creating a genuine dispute as to any material fact regarding the Receiver's voidable transfer claims. Instead of refuting the elements of actual fraud (Utah Code Ann. § 25-6-202(1)(a)), constructive fraud (§ 25-6-202(1)(b)), or present-creditor insolvency transfer (§ 25-6-203(1)), Ms. Johnson relies entirely on meritless legal arguments—namely, that state divorce court decrees create a superior DSO under 11 U.S.C. § 101(14A) and that administrative agencies must certify federal jurisdiction. These arguments fail as a matter of law and do not satisfy her burden under Rule 56.

Therefore, the Motion to Dismiss should be denied.

## 3. ORDER

Receiver's Motion for Summary Judgement[80] is **GRANTED**. The Receiver has met his burden to show that the transfers were fraudulent and should be entitled to recover the full value of the transfers under the UVTA, Utah Code section 25-6-303.

Ms. Johnson's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment[81] is **DENIED**. Ms. Johnson's Motion to Dismiss is procedurally improper and her Motion for

---

[78] Defendant Becky Johnson's Answer, docket no. 9, filed August 27, 2024.

[79] Fed R. Civ. P. 12(b).

[80] Defendant Becky Johnson's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment Under Conditional Acceptance for Value and Demand for Stay Pending Certification of Public Debt Claim, docket no. 22, filed December 5, 2025.

[81] Receiver Wayne Klein's Motion for Summary Judgment ("Receiver's Motion"), docket no. 21, filed December 4, 2025.

Summary Judgment, as a cross-motion to the Receiver's Motion for Summary Judgment, fails to establish a genuine issue of material fact, and lacks any legal basis.

Ms. Johnson's papers also appear drafted with assistance. She must file a declaration within fourteen (14) days identifying each person or AI tool used in preparing her papers filed to date. A declaration with this same information shall accompany any further filings by her unless counsel files on her behalf.

Signed September 25, 2026.

BY THE COURT

David Nuffer
United States District Judge